1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   J & J SPORTS PRODUCTIONS, INC.,              No.  2:14-cv-2666 KJM AC (TEMP)

12                    Plaintiff,

13             v.

14   ARMANDO ANGULO, et al.,                      FINDINGS AND RECOMMENDATIONS

15                    Defendants.

16

17          This matter came before the court on July 24, 2015, for hearing of plaintiff's motion for

18   default judgment against defendant Jose Serratos Velasquez.[1]  ECF No. 20.  Attorney Mark

19   Ketcherside appeared on behalf of the plaintiff.  No appearance was made by or on behalf of the

20   defendant.  At that time oral argument was heard and the motion was taken under submission.

21   Upon review of the motion and the supporting documents, and good cause appearing, THE

22   COURT FINDS AS FOLLOWS:

23                        FACTUAL AND PROCEDURAL BACKGROUND

24          On November 14, 2014, plaintiff J & J Sports Productions, Inc., an international

25   distributor of sports and entertainment programming filed a complaint against defendant Jose

26   Serratos Velasquez, identified as "an owner, and/or operator, and/or licensee, and/or permittee,

27   _____

28   [1]  On November 6, 2015, this matter was reassigned from the previously assigned Magistrate
     Judge to the undersigned.  (ECF No. 30.)

                                                   1

1 and/or person in charge, and/or an individual with dominion, control, oversight and management

2 of the establishment,"[2] alleging that the latter unlawfully intercepted and exhibited a live

3 broadcast of a prizefight program entitled "The Clash in Cotai: Manny Pacquiao v. Brandon Rios,

4 WBO Welterweight Championship Fight Program" ("the Program") in the establishment for

5 commercial advantage without obtaining a sublicense from plaintiff for its use, in violation of the

6 Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553,

7 and state law.  The complaint alleges defendant exhibited the Program on November 23, 2013.

8     Plaintiff brings the following claims: (1) a violation of 47 U.S.C. § 605 (Unauthorized

9 Publication or Use of Communications) alleging that defendant knowingly intercepted, received,

10 and exhibited the Program for purposes of direct or indirect commercial advantage or private

11 financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services)

12 based upon the same allegations; (3) a claim for conversion alleging that defendant tortiously

13 obtained possession of the Program and wrongfully converted it for his own benefit; and (4) a

14 violation of the California Business & Professions Code § 17200, et. seq.

15     In the complaint, plaintiff seeks $110,000 in statutory damages as well as attorneys'

16 fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and costs for Count

17 II; compensatory, exemplary, and punitive damages, as well as attorneys' fees and costs for Count

18 III; and restitution, declaratory relief, injunctive relief, and attorneys' fees for Count IV.

19     The summons and complaint were served on defendant by personal service on February

20 17, 2015.  ECF No. 5; FED. R. CIV. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express,

21 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).

22 Defendant has failed to file an answer or otherwise appear in this action.  The clerk entered

23 default against defendant on May 11, 2015.  ECF No. 15.

24     Request for entry of default and the instant motion for default judgment and supporting

25 papers were served by mail on defendant.  ECF Nos. 14, 18-1.  Defendant did not file an

26 opposition to the motion for entry of default judgment.  Plaintiff seeks an entry of default

27

28 [2]  Although the complaint also named Benjamin Angulo and Armando Angulo as defendants,
plaintiff has dismissed those defendants from this action.  ECF Nos. 16 & 31.

1  judgment in the amount of $112,200 ($10,000 for statutory damages pursuant to 47 U.S.C. §

2  605(e)(3)(C)(i)(II); $100,000 for enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

3  $2,200 for conversion).

4                                                    LEGAL STANDARD

5            Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

6  against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

7  against the action.  See FED. R. CIV. P. 55(a).  However, "[a] defendant's default does not

8  automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

9  238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th

10 Cir. 1986)); see FED. R. CIV. P. 55(b) (governing the entry of default judgments).  Instead, the

11 decision to grant or deny an application for default judgment lies within the district court's sound

12 discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

13 determination, the court may consider the following factors:

14            (1) the possibility of prejudice to the plaintiff; (2) the merits of
              plaintiff's substantive claim; (3) the sufficiency of the complaint;
15            (4) the sum of money at stake in the action; (5) the possibility of a
              dispute concerning material facts; (6) whether the default was due
16            to excusable neglect; and (7) the strong policy underlying the
              Federal Rules of Civil Procedure favoring decisions on the merits.
17

18 Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

19 disfavored.  Id. at 1472.

20           As a general rule, once default is entered, well-pleaded factual allegations in the operative

21 complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

22 v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

23 Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v.

24 Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint

25 are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings,

26 and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co.

27 of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388

28 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A]

                                                            3

1   defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law")

2   (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal.

3   2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's

4   default conclusively establishes that party's liability, although it does not establish the amount of

5   damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th

6   Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure

7   37 that the default conclusively established the liability of the defaulting party).

8                                          DISCUSSION

9   **A.       The Eitel Factors**

10           **1.       Factor One: Possibility of Prejudice to Plaintiff**

11          The first Eitel factor considers whether the plaintiff would suffer prejudice if default

12   judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

13   a default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would potentially

14   face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment,

15   plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel factor

16   favors the entry of default judgment.

17           **2.       Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the**

18                       **Sufficiency of the Complaint**

19          The undersigned considers the merits of plaintiff's substantive claims and the sufficiency

20   of the complaint together because of the relatedness of the two inquiries.  The undersigned must

21   consider whether the allegations in the complaint are sufficient to state a claim that supports the

22   relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175.  Plaintiff

23   seeks entry of default judgment on its claim brought pursuant to 47 U.S.C. § 605(a).  Plaintiff's

24   inability to allege the precise nature of the intercepted transmission in this case, which is largely

25   due to defendant's failure to defend himself in the action, raises a question regarding the scope of

26   47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision.  The Federal

27   Communications Act prohibits, among other things, commercial establishments from intercepting

28   and broadcasting radio communications to its patrons.  See 47 U.S.C. § 605(a).  In relevant part,

1   47 U.S.C. § 605(a) states:

2           No person not being authorized by the sender shall intercept any
            radio communication and divulge or publish the existence, contents,
3           substance, purport, effect, or meaning of such intercepted
            communication to any person. No person not being entitled thereto
4           shall receive or assist in receiving any interstate or foreign
            communication by radio and use such communication (or any
5           information therein contained) for his own benefit or for the benefit
            of another not entitled thereto. No person having received any
6           intercepted radio communication or having become acquainted with
            the contents, substance, purport, effect, or meaning of such
7           communication (or any part thereof) knowing that such
            communication was intercepted, shall divulge or publish the
8           existence, contents, substance, purport, effect, or meaning of such
            communication (or any part thereof) or use such communication (or
9           any information therein contained) for his own benefit or for the
            benefit of another not entitled thereto.
10

11  The Ninth Circuit Court of Appeals has determined that satellite television signals are covered

12  communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir.

13  2008).  The scope of section 605(a) is less clear with respect to transmissions intercepted from a

14  cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a) states, in

15  relevant part: "No person shall intercept or receive or assist in intercepting or receiving any

16  communications service offered over a cable system, unless specifically authorized to do so by a

17  cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

18          Here, plaintiff has not alleged whether the transmission that defendant intercepted was

19  from a cable system or a satellite television signal.  At a minimum, plaintiff's complaint and

20  evidence support a conclusion that defendant intercepted, without authorization, a transmission of

21  the Program and broadcast it to its patrons.  Plaintiff essentially concedes that its complaint and

22  the record contain no allegations or evidence substantiating the nature of the transmission that

23  was intercepted by defendant.  Plaintiff argues, however, that although it was unable to allege the

24  precise means of transmission in this case (i.e., transmission over a cable system or satellite

25  broadcast), it "should not be prejudiced" given defendant's failure to appear or defend himself in

26  this action.  Pl.'s Memo. of P. & A. in Supp. of Motion for Default J. (ECF No. 18-1) at 8.  The

27  undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was

28  deprived of the opportunity to conduct discovery regarding the transmission at issue because of

5

1  defendant's failure to appear or defend himself in this action, plaintiff should not suffer the

2  resulting prejudice.  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency

3  of its pleadings under the <u>Eitel</u> factors are concerned, the complaint and record before the

4  undersigned favor entry of default judgment.

5        **3.      Factor Four: The Sum of Money at Stake in the Action**

6            Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at

7  stake in relation to the seriousness of Defendant's conduct."  <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at

8  1177; <u>see</u> <u>also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal.

9  2003).  Here, plaintiff seeks statutory damages of $110,000 for the willful violation of 47 U.S.C.

10 § 605.  This amount represents the maximum amount plaintiff would be permitted to recover

11 under the statute, including enhanced damages.  In addition, plaintiff seeks compensatory and

12 punitive damages for defendant's tortuous conversion of plaintiff's property.  Plaintiff notes

13 defendant would have been required to pay only $2,200 to broadcast the Program at the

14 establishment, but plaintiff asserts nominal damages have proven insufficient to combat piracy

15 and that defendant therefore should be required to pay the statutory maximum.  Thus, plaintiff

16 seems to concede that amount of damages requested is not proportional to defendant's conduct.

17           Given the substantial amount of money at stake, this factor could weigh against the entry

18 of default judgment.  <u>See</u>, <u>e.g.</u>, <u>Joe Hand Promotions v. Streshly</u>, 655 F.Supp.2d 1136 (S.D. Cal.

19 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); <u>J &</u>

20 <u>J Sports Productions. v. Cardoze</u>, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal.

21 July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages

22 totaling $114,200); <u>see also</u> <u>Board of Trustees of the Sheet Metal Workers v. Vigil</u>, No. C 07-

23 01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored

24 if there were a large sum of money involved"); <u>but</u> <u>see</u> <u>J & J Sports Productions v. Hernandez</u>,

25 No. 2:09-cv-3389 GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010) ("the statutes

26 involved contemplate such an award under certain circumstances," and the factor did not weigh

27 against default judgment).  As discussed below, however, the Court declines to recommend

28 judgment in the amount requested.  Consequently, the factor does not weigh against plaintiff.

1          **4.      Factor Five: The Possibility of a Dispute Concerning Material Facts**

2          The facts of this case are relatively straightforward, and plaintiff has provided the court

3   with well-pleaded allegations supporting its statutory claims and affidavits in support of its

4   allegations.  Here, the Court may assume the truth of well-pleaded facts in the complaint (except

5   as to damages) following the clerk's entry of default and, thus, there is no likelihood that any

6   genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

7   F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

8   as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

9   of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238

10  F.Supp.2d at 1177.

11         **5.      Factor Six: Whether the Default Was Due to Excusable Neglect**

12         Upon review of the record before the Court, the undersigned finds that the default was not

13  the result of excusable neglect.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Plaintiff personally

14  served the defendant with the summons and complaint.  Moreover, plaintiff served defendant by

15  mail with notice of its application for default judgment.  Despite ample notice of this lawsuit and

16  plaintiff's intention to seek a default judgment, defendant has failed to participate in this action.

17  Thus, the record suggests that defendant has chosen not to defend this action, and not that the

18  default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a

19  default judgment.

20         **6.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil**

21                 **Procedure Favoring Decisions on the Merits**

22         "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

23  F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing

24  alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

25  PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694

26  F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, No. C 09-

27  01304 JSW, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); Hartung v. J.D. Byrider, Inc., No.

28  1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009).  Accordingly,

7

1   although the undersigned is cognizant of the policy favoring decisions on the merits-and

2   consistent with existing policy would prefer that this case be resolved on the merits-that policy

3   does not, by itself, preclude the entry of default judgment.

4          Upon consideration of the <u>Eitel</u> factors, the undersigned concludes that plaintiff is entitled

5   to the entry of default judgment against defendant and will make a recommendation to that effect.

6   What remains is the determination of the amount of damages to which plaintiff is entitled.

7   **B.      Terms of Judgment**

8          After determining that a party is entitled to entry of default judgment, the court must

9   determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record

10  in this case, including the affidavits and declarations submitted by plaintiff, the undersigned

11  concludes that plaintiff is entitled to an award of statutory damages in the amount of $5,000 as a

12  result of defendant's unlawful interception and broadcast of the Program, and will recommend the

13  same.

14         Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or

15  more than $10,000" for violation of the Federal Communications Act, and may also award

16  enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes

17  of direct or indirect commercial advantage or private financial gain."  47 U.S.C. §

18  605(e)(3)(C)(i)(II), (e)(3)(C) (ii).

19         Here, plaintiff seeks a judgment in the amount of $112,200.  Plaintiff's application for

20  default judgment and proposed order indicate that this sum consists of $110,000 for a violation of

21  47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $2,200 as compensatory damages arising from

22  defendant's act of conversion.

23         In this case, plaintiff's investigator provided evidence that the establishment, which has a

24  capacity of 75 patrons, was showing the Program on one, 25 inch, television set to as many as 21

25  people.  Decl. of Perry Anderson (ECF No. 18-3) at 2.  Defendant's establishment is not large,

26  and there is no evidence of a repeat violation or additional egregious circumstances.  Moreover,

27  the investigator's report made no mention of a cover charge for entry on the night in question and

28  there is no evidence before the Court of any promotion by defendant that the fight would be

8

1   shown at the establishment.  There is also no evidence before the Court that a special premium on

2   food and drink was being charged at the establishment on the night of the fight or that the

3   establishment was doing any greater level of business on the night the fight was shown than at

4   any other time.  Finally, plaintiff has presented no evidence to the Court suggesting that the

5   defendant is a repeat broadcast piracy offender.  Balancing these facts with the widespread

6   problem of piracy and the need for an award sufficient to deter future piracy, the undersigned will

7   recommend an award of statutory damages in the amount of $5,000.  On the record before the

8   Court, the undersigned does not find that this case merits an award of enhanced damages.

9           Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in

10  the amount of $2,200, which consists of the fee that the defendant would have had to pay to

11  plaintiff in order to lawfully broadcast the Program through a contractual sublicense.  The

12  undersigned will not recommend an award of damages with respect to plaintiff's conversion

13  claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J

14  Sports Prods. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010),

15  but also a compensatory function, which is evidenced by provisions that permit the award of

16  statutory damages or actual damages in a civil action.  See 47 U.S.C. § 605(e)(3) (C)(I); 47

17  U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of

18  $5,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances

19  where an additional award might be warranted.  Accordingly, the undersigned will recommend

20  that plaintiff be awarded no damages on its conversion claim.

21          Finally, although the prayer for relief in the complaint indicates that plaintiff seeks the

22  award of costs and attorneys' fees, the application for default judgment contains no argument or

23  evidence in support of such a request.  Accordingly, the undersigned will not recommend the

24  award of costs or attorneys' fees.

25          Accordingly, IT IS HEREBY RECOMMENDED that:

26              1.  Plaintiff's motion for default judgment (ECF No. 18) be granted;

27              2.  The court enter judgment against defendant on plaintiff's claims brought

28  pursuant to 47 U.S.C. § 605(a);

9

1         3.  The court award statutory damages in an amount of $5,000.00 to plaintiff; and

2         4.  This case be closed.

3      These findings and recommendations are submitted to the United States District Judge

4 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5 after being served with these findings and recommendations, any party may file written

6 objections with the court and serve a copy on all parties.  Such a document should be captioned

7 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

8 within the specified time may waive the right to appeal the District Court's order.  Turner v.

9 Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir.

10 1991).

11 DATED: December 16, 2015

12                                    _____

13                                    ALLISON CLAIRE
                                   UNITED STATES MAGISTRATE JUDGE